No. 3585

Second Circuit

U. S. SECURITIES CORP., INC., v. EXCHANGE NATIONAL BANK OF SHREVEPORT

(November 7, 1930. Opinion and Decree.)

Phelan W. Eatmon and Dickson & Denny, of Shreveport, attorneys for plaintiff, appellant.

Lyons & Prentiss, of Shreveport, attorneys for defendant, appellee.

DREW, J. This suit was brought by the plaintiff, United States Securities Corporation, Inc., against the defendant, the Exchange National Bank, to recover the sum of $400, with legal interest thereon from July 1, 1928, which sum the defendant had charged the plaintiff for the release of certain money held by the defendant as collateral security for plaintiff's indebtedness to the defendant.

Plaintiff alleged that the charge was wrongful, illegal, unwarranted, and ultra vires, and that other sums in the collateral security account had been released by the bank without charge.

Defendant admitted that the charge had been made, and set up that the release of other sums had been merely transactions on its books by which sums had been transferred from the collateral security account to the indebtedness owed by plaintiff to reduce the obligation in the sums so transferred. It also alleged that the transaction for which the $400 was paid was one in which the president of the plaintiff corporation had requested the defendant bank to release outright the sum of $8,300 in order that he might buy all of the outstanding stock of the plaintiff corporation not owned by him, and that at the time the transaction was entered into the plaintiff was indebted to the defendant in a sum of approximately $28,000, the greater portion of which was past due; that it held as collateral security for this debt a sum of approximately $18,000 in cash which, under the banking laws, the defendant had the right to apply against this indebtedness; and that as a favor to the plaintiff the defendant allowed the plaintiff to withdraw $8,300 of this collateral security, which was cash money, and did it knowing that plaintiff intended to use said sum to retire the outstanding stock, thereby reducing the bank's security by that sum and weakening by just that amount the indorsement of the plaintiff on its indebtedness to defendant. The bank allowed $8,300 in cash, which it could have applied on plaintiff's indebtedness, to be withdrawn for the sum of $400.

After the answer was filed, plaintiff filed a rule to take judgment against defendant on the face of the petition and answer. After trial of the rule it was rejected by the court. The case was then tried on the merits and the demands of the plaintiff were rejected. From this judgment the plaintiff has appealed.

The plaintiff was engaged in buying from automobile dealers the chattel mortgage notes taken by them in selling automobiles on credit, and plaintiff in turn rediscounted such notes to the defendant and deposited the notes with defendant as collateral security for the money advanced.

It seems that one of the stockholders of plaintiff, who owned and controlled a majority of its stock, demanded that the affairs of the corporation be liquidated, and, not being satisfied with the manner in which it was being liquidated, threatened to take over the affairs of the corporation and wind it up, provided the stock he con-

trolled was not taken up by the corporation. He agreed to take 50 cents on the dollar for the stock, which in dollars and cents amounted to $8,300 after a deduction of $300 owed to the corporation by another stockholder whose interest this stockholder represented.

At this time plaintiff was indebted to defendant in the sum of nearly $28,000 and had on deposit in the collateral security account at defendant bank the sum of approximately $18,000 in cash.

During the time of the liquidation of plaintiff the funds collected on the collateral notes were deposited in the collateral account, and, with consent of defendant, sufficient of it was withdrawn to pay the salaries of the employees of plaintiff and the necessary expenses of carrying on plaintiff's business as a going concern for the purpose of liquidation, and the balance of such funds was from time to time transferred from the collateral account to reduce the indebtedness of plaintiff to defendant. No money was allowed to be withdrawn from this collateral account for any other purpose.

Mr. W. M. Thomas, who became the sole owner of all stock in the plaintiff after purchasing the other outstanding stock with the $8,300, applied to defendant, stating the requirements of the then other stockholder, and requested the right to withdraw from the collateral account the sum of $8,300 to retire the outstanding stock, which request was at first refused. He then made attempts and efforts to obtain the amount from other persons and to transfer plaintiff's account to other banks, without success. After which he returned to defendant with the same request, and was told that for defendant to allow the withdrawal of this fund would greatly weaken the security it then held against the indebtedness of plaintiff to it. Finally Mr. Thomas offered to pay defendant the sum of $400 in consideration of the withdrawal of the $8,300 from the collateral securities fund, and this was finally agreed to by the defendant. The $8,300 was withdrawn and the outstanding stock retired, and defendant was paid the sum of $400.

The testimony shows that on final liquidation of the affairs of plaintiff, defendant was paid in full the indebtedness of plaintiff to it, and soon thereafter plaintiff filed this suit seeking to recover the $400 for the alleged reason that it was a wrongful charge, unwarranted, and an act ultra vires of the defendant.

The entire stock of the plaintiff was owned by Thomas, and he testified that he was forced to obtain the $8,300 in order to prevent himself from losing the money he had invested in the plaintiff's stock, and that it was for this reason he had paid the $400, but that it was paid under protest. He obtained the money needed and avoided the loss that he claimed would have been incurred by plaintiff.

The defendant released $8,300 of the cash security, and thereby greatly reduced its chances of collecting the debt plaintiff owed it. The defendant was under no obligation to allow plaintiff to withdraw the collateral, and we might say that permitting the withdrawal was unwarranted on defendant's part, in so far as its stockholders and depositors were concerned, and a dangerous practice for any bank to engage in.

However, the plaintiff got value received for its $400, and, according to the testimony of Mr. Thomas, should be the last to complain.

Article 5136 of the Revised Statutes of the United States (12 U.S.C.A., sec. 24) designates, among other powers possessed by national banks, the following:

"Third. To make contracts. * * *
"Seventh. To exercise by its board of directors, or duly authorized officers or agents, subject to law, all such incidental powers as shall be necessary to carry on the business of banking," etc.

This section also provides how these powers may be exercised, by negotiating promissory notes, drafts, bills of exchange, etc., but it has been repeatedly held not to read as limiting the mode of exercising "such incidental powers as shall be necessary to carry on the business of banking," but as descriptive of the kind of banking which is authorized.

The power of the defendant to make the charge complained of we think is given in the above section under powers incidental to and necessary to carry on the business of banking.

However, if we should hold that the act in question of the defendant was ultra vires its power, we think the plaintiff is without right to complain. Plaintiff suggested the transaction and received the benefit of it, saving itself thereby, according to Thomas' testimony, many thousands of dollars. And it has been universally held that under such circumstances one who has received the benefit of an act that is ultra vires the corporation will not be permitted to plead that the act was ultra vires.

As a general rule an act that is ultra vires of a national bank cannot be pleaded by a party to the transaction, but only by the government against the bank. It cannot be pleaded by one benefited by the ultra vires act complained of.

In the case of Dupree v. First National Bank (Tex. Civ. App.) 146 S. W. 608, 611, the court said:

"That * * * national banking corporations are vested with ample power to make such contracts relating to property lawfully held by them as security as may be necessary to enable the corporation to reduce the security to money, and, in furtherance of this purpose, they necessarily have the authority to deal freely with the security and make such contracts with reference to its disposal as in the judgment of its officers may be deemed necessary or expedient and which will enable the corporation to dispose of the security to the best possible advantage."

The majority stockholder of plaintiff had threatened to take over the affairs of the corporation, junk its repossessed cars, wind up its affairs, and take whatever loss he was occasioned thereby, and was not willing that the liquidation of the affairs of the corporation should be prolonged. It therefore became necessary for the stock owned by him to be bought by the corporation, and no doubt in the judgment of the officers of defendant it was deemed better for it for the liquidation to be worked out on orderly lines; and, while they were reducing the security held by the defendant some $8,300, and only receiving $400 in return for it, their judgment proved correct, for in the final liquidation of the affairs of the plaintiff the defendant was paid in full. We think the defendant acted under the implied powers it had.

It is therefore ordered, adjudged, and decreed that the judgment of the lower court be affirmed, with costs.